1

2

3

4

5

6

7

8                              **IN THE UNITED STATES DISTRICT COURT**

9                             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    EDWARD GOMEZ,                              No.  2:20-CV-0757-TLN-DMC-P

12                       Plaintiff,

13             v.                                FINDINGS AND RECOMMENDATIONS

14    A. RAMIREZ, et al.,

15                       Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42

18    U.S.C. § 1983.  Pending before the Court are Defendants' partial motion to dismiss, ECF No. 29,

19    Plaintiff's opposition, ECF No. 30, and Defendants' reply, ECF No. 31.

20

21                              **I. PLAINTIFF'S ALLEGATIONS**

22            Plaintiff, an inmate at California Health Care Facility, Stockton (CHCF), names

23    the following as Defendants:  (1) A. Ramirez, Guard; (2) R. Yepez, Lieutenant; and (3) L.

24    Eldridge, Warden.  See ECF No. 23, pg. 2.  The crux of Plaintiff's complaint concerns a medical

25    needs claim, safety claim, and retaliation claim against Defendant Ramirez, a retaliation claim

26    and a supervisor liability claim against Defendant Yepez, and a supervisor liability claim against

27    Defendant Eldridge.  Plaintiff also asserts a claim for "denying accessed [sic] to the courts," but

28    fails to supply the Court with any facts.  See id. at 5.

1       Defendant Ramirez

2               In Plaintiff's first amended complaint, Plaintiff alleges three claims against

3    Defendant Ramirez:  (1) a violation of Plaintiff's Eighth Amendment rights for having a

4    deliberate indifference to Plaintiff's medical needs; (2) a violation of Plaintiff's Eighth

5    Amendment rights for placing Plaintiff at a substantial risk of serious harm; and (3) a violation of

6    Plaintiff's First Amendment rights for retaliating against Plaintiff.  See id. at 3-6.

7                          1. Medical Needs

8               Plaintiff claims that Defendant Ramirez violated Plaintiff's Eighth Amendment

9    rights by showing deliberate indifference to his medical needs and delaying medical assistance

10   resulting in unnecessary pain and suffering.  See id. at 3.  Plaintiff alleges that on Aug. 14, 2019,

11   he called for medical assistance because he believed he was experiencing autonomic dysreflexia

12   which is an emergency medical condition and requires immediate assistance.  See id.  Plaintiff

13   had stopped urinating, his blood pressure was high, and he believed his catheter was obstructed.

14   See id.  According to the complaint, RN Carasca responded to Plaintiff's call but was prevented

15   from entering Plaintiff's room by Defendant Ramirez.  See id.  Plaintiff alleges that Ramirez

16   would not allow the RN to assist Plaintiff until after Plaintiff disclosed confidential medical

17   information.  See id.  Plaintiff claims that while he waited for medical assistance he was in

18   extreme pain and at risk of serious harm or death.  See id.  Plaintiff alleges that Defendant

19   Ramirez deliberately denied and delayed medical assistance in violation of Plaintiff's Eighth

20   Amendment rights.  See id. at 4.

21                          2. Safety

22              On September 5, 2019, while Plaintiff was being undressed, Defendant Ramirez

23   stood and watched Plaintiff.  See id. at 5.  Defendant Ramirez then "called Plaintiff a child

24   molester, putting Plaintiff in danger if any other inmate would have heard, which brought mush

25   [sic] fear and anxiety to Plaintiff? Plaintiff Gomez is a quadriplegic (C6-C7), which makes it

26   impossible to protect himself in any degree."  Id. (errors in original).

27   / / /

28   / / /

2

1            3. <u>Retaliation</u>

2            On August 26, 2018, Plaintiff wrote a 602 complaint against Defendant Ramirez

3    for denying him medical assistance.  <u>See</u> <u>id.</u> at 5.  Plaintiff alleges that Defendant Ramirez then

4    began harassing Plaintiff for filing a complaint against Defendant Ramirez.  <u>See</u> <u>id.</u>  Plaintiff

5    states that Defendant "Ramirez was hoping that the harassments would intimidate Plaintiff into

6    not exercising his right of going forward with the complaint against him."  <u>Id.</u>  The harassment

7    included looking at Plaintiff while Plaintiff was naked and while having a bowel movement,

8    calling Plaintiff a child molester, threatening to make false allegations against Plaintiff, and

9    threatening to "kick [Plaintiff] out of the unit."  <u>See</u> <u>id.</u>

10            <u>Defendant Yepez</u>

11            1. <u>Retaliation</u>

12            Plaintiff also claims that Defendant Yepez violated his First Amendment rights by

13    retaliating against him for his exercise of free speech.  <u>See</u> <u>id.</u> at 5.  During the 602 appeal

14    interview with Defendant Yepez, Defendant Yepez threatened Plaintiff that "if he did not sign off

15    the 602 written against guard Ramirez . . . 'there must be more property in Plaintiff's cell that

16    guard Ramirez could take.'"  <u>Id.</u>

17            2. <u>Supervisor Liability</u>

18            Additionally, Plaintiff appears to allege a supervisor liability claim against

19    Defendant Yepez.  Plaintiff states that Plaintiff "made it known to Lt. Yepes of the harassments

20    and threats."  <u>Id.</u> at 6 (errors in original).  However, "Yepes choose to make his own threat and

21    did nothing to stop the threats and harassments by Guard Ramirez allowing Ramirez to continue

22    his threats and harassments against Plaintiff."  <u>Id.</u> (errors in original).

23            <u>Defendant Eldridge</u>

24            Plaintiff alleges that Defendant Eldridge is also guilty because Eldridge "was

25    aware of all of the threats, and harassments by signing off the 602's complaints that was written

26    against guard A. Ramirez."  <u>Id.</u> at 6.  Plaintiff further alleges that "[by] doing so, she choose [sic]

27    not to take corrective actions to stop continued violations or defer further abuse against Plaintiff

28    Gomez.  Instead, the reviewing personnel attempted to cover-up and or deny any or all

3

1  wrongdoing."  Id.  Plaintiff does not allege anything further concerning Defendant Eldridge.

2

3                                          **II. STANDARD OF REVIEW**

4          In considering a motion to dismiss, the Court must accept all allegations of

5  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

6  Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

7  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

8  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

9  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

10  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

11  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

12  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

13  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

14          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

15  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

16  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

17  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

18  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

19  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

20  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

21  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at

22  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

23  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24  Iqbal, 129 S. Ct. 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

25  it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

26  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

27  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

28  to relief."  Id. (quoting Twombly, 550 U.S. at 557).

4

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## III. DISCUSSION

In Defendants partial motion to dismiss, Defendants move to dismiss the following claims:  (1) the claim against Defendant Eldridge; (2) a claim for deliberate indifference as to Defendant Yepez; and (3) all claims regarding a violation of the right to access courts.  See ECF No. 29-1, pgs. 3-6.

### A. Defendant Eldridge

#### 1. Supervisor Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

1  personnel who implement a policy so deficient that the policy itself is a repudiation of

2  constitutional rights and the moving force behind a constitutional violation may, however, be

3  liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

4  Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

5           When a defendant holds a supervisory position, the causal link between such

6  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

7  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

8  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

9  civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

10  Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

11  official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

12           Here, Plaintiff alleges that Defendant Eldridge is a warden "who was aware of all

13  of the threats, and harassments, by signing off the 602's complaints . . . ."  ECF No. 23, pg. 6.

14  Plaintiff's claim against Defendant Eldridge concern Defendant Eldridge's alleged inaction in

15  regard to the 602 complaints.  See id.  The only form of participation that Plaintiff alleges

16  Defendant Eldridge had in regard to Plaintiff's constitutional violations was through the 602

17  grievance process.  Plaintiff does not allege any other form of participation or conduct by

18  Defendant Eldridge.  Nor does Plaintiff allege that Defendant Eldridge put in place a policy that

19  resulted in constitutional violations.  Therefore, Defendant Eldridge may only be liable if ignoring

20  a 602 grievance is sufficient participation to give rise to a cognizable claim violative of the

21  Constitution.

22           2. Grievance Process

23           Prisoners have no stand-alone due process rights related to the administrative

24  grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

25  Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

26  inmates to a specific grievance process).  Because there is no right to any particular grievance

27  process, it is impossible for due process to have been violated by ignoring or failing to properly

28  process grievances.   Numerous district courts in this circuit have reached the same conclusion.

1  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

2  process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

3  (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

4  grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL

5  29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

6  a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

7  (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

8  properly failed to state a claim under § 1983).

9         Here, Plaintiff's claim against Defendant Eldridge is that Eldridge ignored

10  Plaintiff's 602 appeal.  ECF No. 23, pg. 6.  However, as discussed above, ignoring 602 appeals or

11  failing to properly process 602 appeals does not violate the Constitution.  Therefore, because

12  Plaintiff has not alleged that Defendant Eldridge participated in the violations of Plaintiff rights

13  except by ignoring the 602 grievances, Plaintiff has not alleged any cognizable claims against

14  Defendant Eldridge, either as a supervisor or otherwise.

15         The Court also notes that Plaintiff ends his brief claim against Defendant Eldridge

16  by stating, "the reviewing personnel attempted to cover-up and or deny any or all wrongdoing."

17  Id.  Plaintiff, however, fails to demonstrate in what way Defendant Eldridge "attempted to cover-

18  up or deny any or all wrongdoing."  Without more information, this conclusory statement is

19  unhelpful to the Court to determine what Plaintiff is alleging Defendant Eldridge did specifically.

20  Plaintiff will be given an opportunity to amend to cure the defects in his claim against Defendant

21  Eldridge.

22         B. Deliberate Indifference and Defendant Yepez

23         The treatment a prisoner receives in prison and the conditions under which

24  the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits

25  cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v.

26  Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic

27  concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97,

28  102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

7

1   Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

2   "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

3   801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

4   two requirements are met: (1) objectively, the official's act or omission must be so serious such

5   that it results in the denial of the minimal civilized measure of life's necessities; and (2)

6   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

7   inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

8   official must have a "sufficiently culpable mind."  See id.

9           Under these principles, prison officials have a duty to take reasonable steps to

10  protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.

11  1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1)

12  objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious

13  harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511

14  U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.

15  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable,

16  however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511

17  U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials

18  know for a certainty that the inmate's safety is in danger, but it requires proof of more than a

19  mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  The

20  plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually

21  knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk,

22  even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

23          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

24  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105;

25  see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health

26  needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

27  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

28  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

8

1   1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

2   Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

3   is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

4   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

5   Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

6          The requirement of deliberate indifference is less stringent in medical needs cases

7   than in other Eighth Amendment contexts because the responsibility to provide inmates with

8   medical care does not generally conflict with competing penological concerns.  See McGuckin,

9   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

10  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

11  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

12  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

13  treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

14  Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

15  that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

16         While Defendants move to dismiss a deliberate indifference claim against

17  Defendant Yepez, the Undersigned does not construe Plaintiff's complaint to be alleging a

18  deliberate indifference claim against Defendant Yepez.  In Plaintiff's first amended complaint

19  there are only two paragraphs of information mentioning Defendant Yepez.  The following are

20  the two paragraphs:

21         During the 602 appeal (CHCF-D-19-03536, Guard Ramirez),
           interview with Lt. Yepes, in the FSS, in front of Lt. Yepes office. Lt.
22         Yepes threaten the Plaintiff that if he did not sign off the 602 written
           against Guard Ramirez, Yepes own words, "There must be more
23         property in Plaintiff's cell that Guard Ramirez could take. (Guard A.
           Ramirez already took a T.V. that was in Plaintiff's cell, which belong
24         to a friend).  This only added more fear and anxiety to the Plaintiff.
25         . . .

26         Lt. Yepes, after the first incident of harassment and threats against
           Plaintiff, Gomez, the Plaintiff Gomez made it known to Lt. Yepes of
27         the harassments and threats.  Lt. Yepes choose to make his own
           threat, and did nothing to stop the threats and harassments by Guard
28         Ramirez allowing Ramirez to continue his threats and harassments
           against Plaintiff.

1    ECF No. 23, pgs. 5-6 (errors in original).

2           The only claims against Defendant Yepez appear to be a retaliation claim and

3    possibly a supervisor liability claim.  It appears clear to the Court that the supervisor claim is in

4    regard to Defendant Yepez allowing Defendant Ramirez to continue to retaliate against Plaintiff.

5    The "threats and harassments" that Plaintiff refers to must be the retaliation against Plaintiff by

6    Defendant Ramirez.  The supervisor claim is not in regard to Plaintiff's medical needs claim

7    against Defendant Ramirez because that was a single event that Plaintiff does not allege

8    Defendant Yepez participated in or directed.  There is no allegation of violations concerning

9    Plaintiff's medical needs as to Defendant Yepez.

10           Additionally, the supervisor claim is not in regard to Plaintiff's safety claim where

11    Defendant Ramirez allegedly called Plaintiff a child molester, for that too was a singular event

12    that Plaintiff does not allege Defendant Yepez participated in or directed.  The conduct Defendant

13    Yepez allowed, if any, was for Guard Ramirez to continue to retaliate against Plaintiff.  There is

14    no deliberate indifference claim at issue as to Defendant Yepez.

15           Thus, the Undersigned does not need to dismiss a deliberate indifference claim that

16    Plaintiff has not alleged.  A deliberate indifference claim against Defendant Yepez is not yet at

17    issue in this case.  However, the Undersigned recommends giving Plaintiff an opportunity to

18    amend to expand on Plaintiff's supervisor liability claim as to Defendant Yepez.

19           C. Access to the Courts

20           Plaintiff does not allege any facts sufficient for a cognizable access to the courts

21    claim.  Prisoners have a First Amendment right of access to the courts.  See Lewis v. Casey, 518

22    U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d

23    1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Prison officials

24    must "assist inmates in the preparation and filing of meaningful legal papers by providing

25    prisoners with adequate law libraries or adequate assistance from persons trained in the law."

26    Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on

27    other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  But the

28    right does not require a particular methodology.  See Lewis, 518 U.S. at 356.  It guarantees the

1  "capability of bringing contemplated challenges to sentences or conditions of confinement before

2  the courts." Id.  It does not promise to turn inmates into effective litigators.  See id. at 354-55;

3  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).  The right of access secures the ability to

4  present non-frivolous claims to the court, it does not secure a right to discover claims or litigate

5  them effectively once filed.  See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655.  The tools

6  required are those that inmates need to attack their sentences or challenge conditions of

7  confinement.  See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655.  "Impairment of any other

8  litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

9  conviction and incarceration."  Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655.  The right is

10  restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and

11  habeas corpus petitions.  Lewis, 518 U.S. at 353 n.3, 354-56.

12       The United States Supreme Court has identified two categories of access-to-court

13  claims.  Christopher v. Harbury, 536 U.S. 403, 412-13 (2002).  The first category includes

14  "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability

15  to prepare and file a suit.  Id. at 413.  The second category, "backward-looking" claims, allege

16  that due to official action, a specific case "cannot now be tried (or tried with all material

17  evidence), no matter what official action may be in the future."  Id. at 413-14.  These cases look

18  "backward to a time when specific litigation ended poorly, or could not have commenced, or

19  could have produced a remedy subsequently unobtainable."  Id. at 414.

20       To establish an access to the court violation, a prisoner must identify an actual

21  injury.  Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th

22  Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2

23  (E.D. Cal. Apr. 17, 2020).  An actual injury is "actual prejudice with respect to contemplated or

24  existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis,

25  518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2.  An actual injury is a jurisdictional

26  requirement and may not be waived.  See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL

27  1904818, at *2.  And in the backward-looking context more specifically, a plaintiff must identify:

28  (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the

1  litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is]

2  not otherwise available in some suit that may yet be brought."  Harbury, 536 U.S. at 414-18;

3  Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL

4  714300, at *6 (E.D. Cal. Feb. 22, 2017).

5           Here, Plaintiff does not allege facts as to any of the Defendants for violating

6  Plaintiff's right to access to the courts.  There is no allegation that Plaintiff did not have access to

7  the law library or minimal access to legal advice, that Plaintiff suffered actual prejudice with

8  respect to contemplated or existing litigation, or that he has been denied access to the courts.

9  Plaintiff appears to be conflating his retaliation claim with a violation of the right to access to the

10 courts.  The Undersigned recommends granting Defendants' motion as to this claim.  Plaintiff

11 will have an opportunity to amend his complaint to add facts supporting an access to the courts

12 claim.

13 / / /

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

12

## IV. CONCLUSION

Based on the foregoing, the Undersigned recommends that:

        1.      Defendant's partial motion to dismiss be granted;

        2.      Plaintiff shall be given an opportunity to amend as to the allegations against Defendant Eldridge;

        3.      Plaintiff shall be given an opportunity to amend Plaintiff's supervisor liability claim against Defendant Yepez; and

        4.      Plaintiff shall be given an opportunity to amend as to Plaintiff's access to courts claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 3, 2022

                                    DENNIS M. COTA
                                    UNITED STATES MAGISTRATE JUDGE