IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD GOMEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>A. RAMIREZ, et al.,<br><br>        Defendants. | No. 2:20-CV-0757-TLN-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's third amended complaint, ECF No. 40.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with a pro se complaint against Defendants Ramirez and Yepez. See ECF No. 1. On June 15, 2021, the Court issued an order determining Plaintiff's original complaint was appropriate for service as to both named defendants. See ECF No. 8. Defendants Ramirez and Yepez filed their answer on August 20, 2021. See ECF No. 15.

On August 30, 2021, Plaintiff filed a motion for leave to amend and, with his motion, submitted a proposed first amended complaint adding Eldridge as a defendant to the action. See ECF No. 16. On September 8, 2021, the Court denied Plaintiff's motion for leave to amend as unnecessary and directed that the first amended complaint submitted with Plaintiff's motion be filed as-of-right. See ECF No. 22. Concurrently, the Court directed service of process on Defendant Eldridge. See ECF No. 17. Eldridge waived service on October 7, 2021. See ECF No. 25.

All three defendants responded to the first amended complaint by way of a motion to partially dismiss filed on November 29, 2021. See ECF No. 29. On June 6, 2022, the Court issued findings and recommendations that Plaintiff's first amended complaint be dismissed with leave to amend. See ECF No. 34. Before the findings and recommendations were addressed by the District Judge, Plaintiff filed a second amended complaint. See ECF No. 35. On September 22, 2022, the District Judge issued an order adopting the June 6, 2022, findings and recommendations in full and deeming Plaintiff's second amended complaint filed as of the date of

1  the order. See ECF No. 38.

2  On July 31, 2023, the Court issued an order addressing the sufficiency of Plaintiff's second amended complaint. See ECF No. 39. The Court determined that the second amended complaint set forth cognizable medical deliberate indifference and retaliation claims against Defendant Ramirez, as well as a cognizable retaliation claim against Defendant Yepez. See id. at 3. Plaintiff was granted the opportunity to file a third amended complaint as to his claim against Defendant Eldridge and his claim of denial of access to the courts, both of which were found not cognizable as alleged in the second amended complaint. See id. at 4-5. Plaintiff filed the operative third amended complaint on September 8, 2023. See ECF No. 40.

**B.     Plaintiff's Allegations**

Gomez is a quadriplegic inmate at the California Health Care Facility (CHCF). ECF No. 39 at 2. In the third amended complaint, Plaintiff names the following as defendants: (1) A. Ramirez, a Guard at CHCF; (2) R. Yepez, a Lieutenant at CHCF; and (3) L. Eldridge, the Warden of CHCF. See ECF No. 40, pg. 2.

Plaintiff alleges a violation of his Eighth Amendment rights due to delay in medical care. See id. at 3. On August 14, 2019, Plaintiff was in his cell when he felt his blood pressure rising and noticed he had stopped urinating. See id. Plaintiff believed his autonomic dysreflexia was triggered because his catheter was obstructed, and he called for medical assistance. See id. Registered Nurse Carasca answered Plaintiff's call for assistance and Plaintiff informed her of his symptoms. See id. Plaintiff claims that Defendant Ramirez refused to allow Carasca into his cell. See id. Carasca returned to Plaintiff's cell door with Defendant Ramirez and Defendant Ramirez began yelling at Plaintiff, informing him that he would not receive medical assistance. See id. at 3-4. After asking Plaintiff multiple questions about Plaintiff's symptoms, Defendant Ramirez ultimately allowed the medical staff to enter Plaintiff's cell and assist Plaintiff to bed. See id. When Plaintiff was helped back to bed, he began to urinate again. See id. at 4.

///

///

According to Plaintiff, Defendant Ramirez deliberately interfered, denied, and delayed medical assistance, in violation of Plaintiff's rights. See id. Plaintiff asserts that, due to the delay, Plaintiff's autonomic dysreflexia became worse and Plaintiff subsequently suffered greater pain and a more substantial risk of harm. See id.

Next, Plaintiff asserts violations of his First Amendment rights based on denial of access to the courts as well as retaliation. See id. at 5. On August 26, 2019, Plaintiff submitted an inmate grievance against Defendant Ramirez for denying him medical assistance. See id. In turn, Defendant Ramirez began retaliating against Plaintiff. See id. According to Plaintiff, Ramirez said that he would begin making false accusations against Gomez to get him removed from the unit. See id. On September 5, 2019, when a member of the medical staff was undressing Plaintiff for bedtime, Defendant Ramirez stayed and watched. See id. Plaintiff alleges that when the medical staff left the room, Defendant Ramirez called Plaintiff a child molester. See id. Plaintiff asserts that accusations like these put Plaintiff in danger if other inmates overheard. See id.

After filing the original grievance against Defendant Ramirez, Plaintiff had an interview with Lieutenant Yepez as part of the appeal process. See id. at 6. Plaintiff alleges that Defendant Yepez threatened that, if Plaintiff did not withdraw the grievance, Defendant Ramirez would take more of Plaintiff's property. See id.

Plaintiff further claims that Defendant Ramirez came to Plaintiff on October 17, 2019, and threatened to make false allegations against Plaintiff and told Plaintiff that he would be kicking Plaintiff out of the unit. See id. Later that night, while Plaintiff was having a bowel movement, Ramirez was watching Plaintiff. See id. On October 30, 2019, Defendant Ramirez allegedly entered Plaintiff's cell and walked around the medical privacy curtain and watched Plaintiff as medical staff were changing Plaintiff's catheter. See id. Plaintiff states that he was naked at the time. See id. Plaintiff later wrote a letter to Defendant Eldridge describing Defendant Ramirez's actions. See id. Eldridge merely advised Gomez to continue writing grievances. See id. at 6-7.

///

///

## II. DISCUSSION

As with the second amended complaint, the Court finds that the third amended complaint states cognizable claims against Defendant Ramirez under the Eighth Amendment for medical deliberate indifference and under the First Amendment for retaliation. The third amended complaint also appears to state a cognizable First Amendment retaliation claim against Defendant Yepez. Plaintiff, however, continues to fail to plead facts to establish the supervisory liability of Defendant Eldridge, the prison warden, or to establish a cognizable claim against any defendant based denial of access to the courts.

### A. Supervisory Liability of Defendant Eldridge

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

///

Plaintiff asserts that he wrote a letter to Defendant Eldridge describing Defendant Ramirez's conduct against Plaintiff. See ECF No. 40, pg. 6. Defendant Eldridge responded to the letter and recommended Plaintiff "continue to write 602's." See id. Plaintiff, however, fails to allege specific facts as to Defendant Eldridge's conduct that led to constitutional violations by the other defendants.

Finally, to the extent Plaintiff's claim against Defendant Eldridge rests on the notion that Eldridge failed to properly address Plaintiff's inmate grievances, such a claim is not cognizable. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

**B.     Access to the Courts**

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011)

(overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL

1904818, at *2.  And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Here, Plaintiff does not allege any sufficient facts for a cognizable access to the courts claim because he has not alleged an actual injury, such as actual prejudice with respect to contemplated or existing litigation.

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amendment, and in light of the Court's previous orders, Plaintiff is not entitled to further leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends as follows:

1. Defendant Eldridge be dismissed with prejudice for failure to state a claim.
2. Plaintiff's claim of denial of access to the Courts be dismissed with prejudice for failure to state a claim.
3. Defendants Ramirez and Yepez be directed to file an answer as to the following remaining claims:
   a. Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendant Ramirez.
   b. Plaintiff's First Amendment retaliation claims against Defendants Ramirez and Yepez.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of

8

objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 17, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE